**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MORSHED ALAM,<br>*Petitioner*,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br>*Respondent.* | No. 19-72744<br><br>Agency No.<br>A215-826-397<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted En Banc July 12, 2021[*]
Pasadena, California

Filed September 8, 2021

Before: Sidney R. Thomas, Chief Judge, and Johnnie B.
Rawlinson, Consuelo M. Callahan, Milan D. Smith, Jr.,
Mary H. Murguia, Morgan Christen, Paul J. Watford,
Andrew D. Hurwitz, Michelle T. Friedland, Mark J.
Bennett, and Daniel A. Bress, Circuit Judges.

Opinion by Chief Judge Thomas;
Concurrence by Judge Bennett

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

The en banc court overruled prior Ninth Circuit precedent establishing and applying the single factor rule, which required the court to sustain an adverse credibility determination from the Board of Immigration Appeals, so long as one of the agency's identified grounds was supported by substantial evidence.

An immigration judge denied Morshed Alam's asylum and withholding application on adverse credibility grounds, identifying seven reasons to support the credibility determination. The government argued before this court that the credibility determination was supported by just two of the seven grounds. A divided three-judge panel denied the petition for review in a non-precedential memorandum disposition, relying on only one of the seven grounds to conclude that the IJ's adverse credibility determination was supported by substantial evidence. Judge Collins dissented, disagreeing that substantial evidence supported the IJ's adverse credibility determination and criticizing this circuit's single factor rule. In considering the petition for rehearing en banc, the panel requested that the parties provide supplemental briefing as to whether there is a conflict between the single factor rule and the REAL ID Act. Both parties agreed that the single factor rule could not be reconciled with the REAL ID Act.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The en banc court recounted the origin of the single factor rule, which was rooted in the pre-REAL ID Act requirement that an adverse credibility finding had to rest on at least one ground that went "to the heart of the claim" to be sustained on review.  Prior to enactment of the REAL ID Act, this circuit held that minor discrepancies, inconsistencies, or omissions that did not go to the heart of an applicant's asylum claim could not constitute substantial evidence in support of an adverse credibility finding.  This circuit further held that it was required to sustain an adverse credibility finding in an asylum case, so long as one of the agency's identified grounds was supported by substantial evidence and went to the heart of the claim.  Thus, before the REAL ID Act, the outcome of a petitioner's challenge to the agency's adverse credibility finding depended entirely on whether the agency had cited at least one valid, individual ground going to the heart of the claim.  If such a ground was absent, this court could not sustain the finding; if it was present, it was required to do so.

The REAL ID Act eliminated the "heart of the claim" requirement and required IJs to consider all factors under the totality of the circumstances in assessing credibility.  The en banc court wrote that although this circuit has recognized that the REAL ID Act eliminated the "heart of the claim" requirement, it has continued to adhere to the formulation that sustaining an adverse credibility finding is required if substantial evidence supports a single factor in the adverse credibility analysis.  The en banc court explained that by clinging to one half of an abrogated rule out of context, this circuit has been affirming a conclusion that, in most cases, the IJ would not have made in the first place: that a single factor suffices on its own for an adverse credibility determination.  Observing that no sister circuits have applied

the single factor rule post-REAL ID Act, and given the REAL
ID Act's explicit statutory language requiring consideration
of the "totality of the circumstances" and "all relevant
factors," the court concluded that the REAL ID Act
effectively abrogated the single factor rule. The en banc
court wrote that there is no bright-line rule under which some
number of inconsistencies requires sustaining or rejecting an
adverse credibility determination. Rather, review will always
require assessing the totality of the circumstances. Thus, to
the extent that Ninth Circuit precedents employed the single
factor rule or are otherwise inconsistent with this standard,
the court overruled those cases. The court remanded the case
to the three-judge panel to re-examine the petition for review
in light of its clarification of the standard for reviewing the
Board's adverse credibility determinations.

Concurring, Judge Bennett agreed with the en banc
court's opinion and judgment holding that the single factor
rule conflicts with the REAL ID Act. Judge Bennett wrote
separately to highlight other judge-made rules that are a part
of Ninth Circuit jurisprudence, which, given the decision in
this case, and the Supreme Court's decisions in *Garland v.
Ming Dai*, 141 S. Ct. 1669 (2021), and *United States v.
Palomar-Santiago*, 141 S. Ct. 1615 (2021), may warrant
reconsideration en banc, including:

(1) *United States v. Gonzalez-Villalobos*, 724 F.3d 1125
(9th Cir. 2013) (recognizing exceptions to the exhaustion
requirements of 8 U.S.C. § 1326(d) where an individual
is deprived of his right to appeal to the Board). Judge
Bennett wrote that the en banc court should consider
whether these exceptions conflict with the Supreme
Court's decision in *Palomar-Santiago*, which held that
each of the requirements of § 1326(d) is mandatory;

(2) *Singh v. Holder*, 643 F.3d 1178 (9th Cir. 2011) (a pre-REAL ID Act case setting forth a categorical rule that a petitioner's lie always counts as substantial evidence for an adverse credibility finding, except in the narrow exception set forth *Akinmade v. INS*, 196 F.3d 951 (9th Cir. 1999)). In *Akinmade,* this circuit held that a petitioner's lie is not necessarily probative of credibility if the petitioner lied to enter the United States and escape persecution. Judge Bennett wrote that the en banc court should consider whether there is a reason to limit consideration of the circumstances surrounding the petitioner's lie to only cases that fall within the *Akinmade* exception, or whether the court should decide whether a petitioner's lie constitutes substantial evidence by looking at the totality of the circumstances in every case, as the INA directs in 8 U.S.C. § 1158(b)(1)(B)(iii);

(3) *Mamigonian v. Biggs*, 710 F.3d 936 (9th Cir. 2013) (interpreting the jurisdiction-stripping provision of § 1252(a)(2)(B)(i), which states that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title," to apply only to agency determinations made on discretionary grounds). Judge Bennett wrote that the en banc court should consider whether limiting the jurisdiction stripping provision to discretionary grounds ignores Congressional intent and is at odds with the plain language of the statute, which states "no court shall have jurisdiction to review . . . any judgment" regarding the grant of relief pursuant to the specified provisions;

(4) *Singh v. Holder*, 656 F.3d 1047 (9th Cir. 2011) (concluding for purposes of the extraordinary

circumstances exception to the one-year asylum time bar, 8 U.S.C. § 1158(a)(2)(D), and 8 C.F.R. § 1208.4(a)(5), that a filing delay of less than six months after an applicant's nonimmigrant status has expired is presumptively reasonable). Judge Bennett wrote that the presumption as to the reasonableness of a filing delay of less than six months is based on flawed logic, explaining that the regulation's statement that a delay of six months or more clearly is not reasonable does not mean that the converse is also true, i.e., that a delay of less than six months presumptively is—especially when the regulation itself states that shorter delays should be "considered on a case-by-case basis, with the decision-maker taking into account the totality of the circumstances."

## COUNSEL

Mate Jurkovic and Chelsey Noelle Kelso, Goldstein & Associates LLC, Pittsburgh, Pennsylvania, for Petitioner.

Brian M. Boynton, Acting Assistant Attorney General; John W. Blakeley, Assistant Director; Greg D. Mack, Senior Litigation Counsel; Elizabeth K. Fitzgerald-Sambou, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

THOMAS, Chief Judge:

We voted to rehear this case en banc to reconsider our "single factor rule," which we have applied in considering petitions for review from decisions by the Board of Immigration Appeals ("BIA"). The single factor rule, as we have applied it, requires us to sustain an adverse credibility finding if "one of the [agency's] identified grounds is supported by substantial evidence." *Wang v. INS*, 352 F.3d 1250, 1259 (9th Cir. 2003).

On rehearing en banc, we hold that the single factor rule conflicts with the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005), and we overrule our prior precedent establishing and applying it. We remand this case to the three-judge panel to re-examine the petition for review in light of our clarification of the standard for reviewing the BIA's adverse credibility determinations.

I

Morshed Alam, a Bangladeshi citizen, petitions for review of the BIA decision denying his applications for asylum and withholding of removal. Alam sought relief based on his father's membership in one of the country's opposition political parties. The immigration judge ("IJ") denied his application, making an express adverse credibility determination. The IJ identified seven reasons supporting the adverse credibility finding. However, the IJ also held that, absent that finding, Alam would be entitled to a grant of asylum. On appeal, the BIA adopted and affirmed the IJ's

decision pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994).

Alam filed a petition for review arguing, *inter alia*, that the IJ's adverse credibility determination was not supported by substantial evidence. Alam did not challenge the single factor rule. In response, the United States argued that the BIA's adverse credibility determination was supported by just two of the seven grounds that the IJ had cited, and that application of the single factor rule required sustaining the adverse credibility finding.

A divided three-judge panel denied the petition for review in a non-precedential memorandum disposition. *Alam v. Barr*, 837 F. App'x 424 (9th Cir. 2020). It concluded that the IJ's adverse credibility determination was supported by substantial evidence, relying on only one of the seven grounds. *Id.* at 425–26. Judge Collins dissented, disagreeing that substantial evidence supported the IJ's adverse credibility determination and criticizing our Circuit's single factor rule. *Id.* at 427–29 (Collins, J., dissenting).

In considering the petition for rehearing en banc, we requested that the parties provide supplemental briefing as to whether there is a conflict between a single factor rule and the REAL ID Act. Both parties agreed that our single factor rule could not be reconciled with the REAL ID Act. We subsequently voted to rehear the case en banc. Because the BIA affirmed on the basis of *Matter of Burbano*, we review the IJ's decision as if it were the BIA's decision. *See Kwong v. Holder*, 671 F.3d 872, 876 (9th Cir. 2011).

II

The single factor rule is rooted in our pre-REAL ID Act requirement that an adverse credibility finding had to rest on at least one ground that went "to the heart of the claim" to be sustained on review. Prior to enactment of the REAL ID Act, we concluded that "minor discrepancies, inconsistencies, or omissions that d[id] not go to the heart of an applicant's asylum claim [could not] constitute substantial evidence" in support of an adverse credibility finding. *Chen v. INS*, 266 F.3d 1094, 1098 (9th Cir. 2001), *judgment vacated on other grounds sub nom. INS v. Chen*, 537 U.S. 1016 (2002); *see also Ceballos-Castillo v. INS*, 904 F.2d 519, 520 (9th Cir. 1990) (distinguishing incidental misstatements from misstatements that went to the heart of the petitioner's claim).

We elaborated on that rule in *Wang*, holding that we were *required* to sustain an adverse credibility finding in an asylum case, "[s]o long as one of the [agency's] identified grounds [wa]s supported by substantial evidence and [went] to the heart of [the] claim." *Wang*, 352 F.3d at 1259; *see also Li v. Ashcroft*, 378 F.3d 959, 964 (9th Cir. 2004) ("Although some of the factors the IJ relied upon are either unsupported or irrelevant, '[s]o long as one of the identified grounds is supported by substantial evidence and goes to the heart of [Li's] claim of persecution, we are bound to accept the IJ's adverse credibility finding.'" (alterations in original) (quoting *Wang*, 352 F.3d at 1259)). Before the REAL ID Act, the outcome of a petitioner's challenge to the agency's adverse credibility finding depended entirely on whether the agency had cited at least one valid, individual ground going to the heart of the claim. If such a ground was absent, we could not sustain the finding; if it was present, we were required to do so.

10                          ALAM V. GARLAND

The REAL ID Act eliminated the "heart of the claim" requirement and required IJs to consider all factors under the totality of the circumstances in assessing credibility. Specifically, it provided that:

> Considering the *totality of the circumstances, and all relevant factors*, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness . . . , the consistency between the applicant's or witness's written and oral statements . . . , and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim*, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii) (emphases added).

In sum, under the REAL ID Act, credibility determinations are made—and must be reviewed—based on the "totality of the circumstances and all relevant factors," not a single factor. Thus, the REAL ID Act effectively abrogated *Wang*'s contrary holding that an adverse credibility finding is supported by substantial evidence if it is supported by a single ground that goes to the heart of the claim. *See Shrestha v. Holder*, 590 F.3d 1034, 1043 (9th Cir. 2010) ("The REAL ID Act implemented an important substantive change concerning the kinds of inconsistencies that may give rise to an adverse credibility determination. Inconsistencies no longer need to 'go to the heart' of the petitioner's claim to form the basis of an adverse credibility determination." (quoting § 1158(b)(1)(B)(iii))).

Although we recognized that the REAL ID Act eliminated *Wang*'s "heart of the claim" requirement, we have continued to adhere to the second part of *Wang*'s formulation, namely, that sustaining an adverse credibility finding is required if substantial evidence supports a single factor in the adverse credibility analysis. *See, e.g.*, *Qiu v. Barr*, 944 F.3d 837, 842 (9th Cir. 2019); *Singh v. Lynch*, 802 F.3d 972, 976 n.2 (9th Cir. 2015); *Jiang v. Holder*, 754 F.3d 733, 738–39 (9th Cir. 2014). We have also relied on the single factor rule in countless non-precedential decisions. By clinging to one half of an abrogated rule out of context, we have been affirming a conclusion that, in most cases, the IJ would not have made in the first place: that a single factor suffices on its own for an adverse credibility determination.

None of our sister circuits have applied the single factor rule post-REAL ID Act. Rather, they have applied the totality of the circumstances standard.[1]

---

[1] *See, e.g.*, *Jabri v. Holder*, 675 F.3d 20, 24–26 (1st Cir. 2012) (remanding when one of three grounds for the adverse credibility determination was valid because substantial evidence did not support the overall credibility determination); *Gao v. Sessions*, 891 F.3d 67, 79–82 (2d Cir. 2018) (remanding when some but not all of the grounds for the adverse credibility determination were valid because substantial evidence did not support the overall credibility determination); *Alimbaev v. Att'y Gen. of United States*, 872 F.3d 188, 196 (3d Cir. 2017) ("[W]e will . . . uphold [the agency's adverse credibility] findings to the extent that they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." (internal quotation marks omitted)); *Lin v. Holder*, 736 F.3d 343, 351 (4th Cir. 2013) ("Even the existence of only a *few* such inconsistencies *can* support an adverse credibility determination." (emphasis added)); *Suate-Orellana v. Barr*, 979 F.3d 1056, 1060 (5th Cir. 2020) ("We defer to the agency's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling."

Given the REAL ID Act's explicit statutory language, we join our sister circuits and hold that, in assessing an adverse credibility finding under the Act, we must look to the "totality of the circumstances[] and all relevant factors." § 1158(b)(1)(B)(iii). There is no bright-line rule under which some number of inconsistencies requires sustaining or rejecting an adverse credibility determination—our review will always require assessing the totality of the

---

(internal quotation marks omitted)); *Slyusar v. Holder*, 740 F.3d 1068, 1075 (6th Cir. 2014) ("Although the credibility determination no longer includes a requirement that the inconsistency be material to the asylee's claim, we urge courts to remember that any inconsistencies or inaccuracies must always be considered in light of the 'totality of the circumstances.' 8 U.S.C. § 1158(b)(1)(B)(iii)."); *Cojocari v. Sessions*, 863 F.3d 616, 626 (7th Cir. 2017) (remanding where the agency's adverse credibility finding cited some valid grounds but "emphasized many other trivial matters that d[id] not have a plausible bearing on [the petitioner's] credibility" such that the court had "no confidence that the [immigration] judge would have reached the same adverse decision if she had focused on the one or two details that might actually matter"); *Li v. Holder*, 745 F.3d 336, 341 (8th Cir. 2014) (considering and rejecting an argument that "the BIA failed to evaluate [the petitioner's] credibility under the totality of the circumstances" by discussing the multiple material inconsistencies the IJ identified); *Uanreroro v. Gonzales*, 443 F.3d 1197, 1210–11 (10th Cir. 2006) ("When making a credibility determination, the IJ is required to consider the totality of the circumstances . . . . [W]hile it was appropriate for the IJ to consider [the petitioner's untruthful] statements upon entry as a factor in its credibility determination, it does not alone rise to the level of substantial evidence to support an adverse decision on her claims for relief." (internal quotation marks omitted)); *Wu v. U.S. Att'y Gen.*, 712 F.3d 486, 494–98 (11th Cir. 2013) (remanding when one of the grounds for the adverse credibility determination was valid because substantial evidence did not support the overall credibility determination, and observing that one "tangential inconsistency, standing alone and considered in the totality of the circumstances, is insufficient to serve as the sole basis for the IJ's finding that Wu is without credibility" (internal quotation marks omitted)).

circumstances.  To the extent that our precedents employed the single factor rule or are otherwise inconsistent with this standard, we overrule those cases.

We remand this case to the three-judge panel for reconsideration in light of the newly articulated standard for reviewing adverse credibility determinations.

**REMANDED** to the three-judge panel.

BENNETT, Circuit Judge, concurring:

I concur in the court's opinion and judgment holding "that the single factor rule conflicts with the REAL ID Act of 2005."  Opinion at 7.  I write separately to highlight other judge-made rules that are a part of our jurisprudence, which, given our decision today and the Supreme Court's decisions in *Garland v. Ming Dai*, 141 S. Ct. 1669 (2021), and *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021), we may want to revisit en banc.[1]

1.  In *Palomar-Santiago*, the Supreme Court reversed our rule that excused defendants from satisfying the first two

---

[1] I note also that the rules I highlight below are potential candidates for reconsideration by three-judge panels pursuant to the directive of our en banc court in *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).

requirements of 8 U.S.C. § 1326(d)[2] "if they were 'not convicted of an offense that made [them] removable.'" 141 S. Ct. at 1620 (alteration in original) (quoting *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017)). In so doing, the Court held "that each of the statutory requirements of § 1326(d) is mandatory." *Id.* at 1622.

Our controlling law holds "that where an alien is deprived of his right to appeal to the BIA, he satisfies both [§ 1326](d)(1) and (d)(2)." *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013).

> The cases in which we have determined that § 1326(d)(1) and (d)(2) were satisfied can be divided into three overlapping categories. First, we have held that § 1326(d)(1) and (d)(2) are satisfied when the IJ failed to inform the alien that he had a right to appeal his deportation order to the BIA. Second, we have held that an IJ's failure to inform the

---

[2] Section 1326(d) provides that:

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

> alien that he is eligible for a certain type of
> relief also satisfies § 1326(d)(1) and (d)(2),
> because an alien who is not made aware of his
> or her apparent eligibility for relief has had no
> meaningful opportunity to appeal the removal
> and seek such relief. . . . Third, when an alien
> has waived his right to appeal to the BIA, he
> can nevertheless satisfy § 1326(d)(1) and
> (d)(2) by showing that his waiver was not
> considered and intelligent.

*Id.* at 1130–31 (quotation marks and citations omitted).

In each circumstance described above, we created an exception to the exhaustion requirement delineated in § 1326(d)(1). This appears to conflict with the Supreme Court's *Palomar-Santiago* decision. *See* 141 S. Ct. at 1622. Indeed, in *Zamorano v. Garland*, 2 F.4th 1213 (9th Cir. 2021), we remarked that *Palomar-Santiago* "casts doubt on the continued vitality of our exhaustion excusal rule" where an IJ fails to inform an alien of his right to appeal. *Id.* at 1225. And in *United States v. Bastide-Hernandez*, 3 F.4th 1193 (9th Cir. 2021), we noted that those doubts apply to each of the exhaustion excusal rules outlined in *Gonzalez-Villalobos*. *See id.* at 1197. In my view, none of these rules survive *Palomar-Santiago*.

2. In the adverse credibility determination context, we have said that when a petitioner "admits that she made a conscious decision to lie to the asylum office . . . [t]hat *always* counts as substantial evidence supporting an adverse credibility finding, unless the lie falls within the narrow *Akinmade* [*v. INS*, 196 F.3d 951 (9th Cir. 1999)] exception." *Singh v. Holder*, 643 F.3d 1178, 1181 (9th Cir. 2011)

(emphasis added). *Singh* was a pre-REAL ID Act case, but we have continued to apply the rule it established in countless cases since. *See, e.g.*, *Wan v. Garland*, 848 F. App'x 308, 309 (9th Cir. 2021) ("Under the REAL ID Act, deliberate deception always counts as substantial evidence supporting an adverse credibility finding, even if the truth turns out to be irrelevant." (quoting *Singh*, 643 F.3d at 1181) (cleaned up)); *Zhang v. Barr*, 827 F. App'x 767, 767 (9th Cir. 2020) (same); *Zhong v. Barr*, 815 F. App'x 189, 189 (9th Cir. 2020) (same). Sometimes, we have even decided that there is no need to consider other factors if a petitioner has lied. *See Yi v. Sessions*, 705 F. App'x 660, 661 (9th Cir. 2017); *Rahman v. Sessions*, 686 F. App'x 465, 466–67 (9th Cir. 2017).

This categorical rule that a petitioner's lie always counts as substantial evidence for an adverse credibility finding, except when the *Akinmade* exception applies, has no basis in the text of the Immigration and Nationality Act ("INA"), which instead requires consideration of the "totality of the circumstances." 8 U.S.C. § 1158(b)(1)(B)(iii). Indeed, the exception is itself an acknowledgment that we cannot treat a petitioner's lie the same way in every case. In *Akinmade*, we recognized that a petitioner's lie is not necessarily probative of credibility if the petitioner lied to enter the United States and escape persecution. 196 F.3d at 955. That is, for cases within this narrow exception, the petitioner's circumstances justify his lie. *See id.* at 955–56. But there is no reason to limit our consideration of the circumstances surrounding the petitioner's lie to only cases that fall within the exception. We should decide whether a petitioner's lie constitutes substantial evidence by looking at the totality of the circumstances in every case, as the INA directs.

3. The INA provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." 8 U.S.C. § 1252(a)(2)(B)(i). In *Mamigonian v. Biggs*, 710 F.3d 936 (9th Cir. 2013), we held that "district courts have jurisdiction to hear cases challenging final agency determinations respecting eligibility for the immigration benefits enumerated in 8 U.S.C. § 1252(a)(2)(B)(i) *made on nondiscretionary grounds*, provided there is no pending removal proceeding in which an alien could apply for such benefits." *Id.* at 945 (emphasis added). In other words, we interpreted the jurisdiction-stripping provision of § 1252(a)(2)(B)(i) to apply only to agency determinations made on discretionary grounds.

Our rule in *Mamigonian* is at best questionable given that the INA's jurisdiction-stripping provision includes no exception for nondiscretionary final agency determinations. *See* 8 U.S.C. § 1252(a)(2)(B)(i). The plain language of the statute, which must be enforced when there is no ambiguity, *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009), is unequivocal that "no court shall have jurisdiction to review . . . *any* judgment" regarding the grant of relief pursuant to the specified provisions. *See* 8 U.S.C. § 1252(a)(2)(B)(i) (emphasis added). "Any" means "*every*—used . . . to indicate one that is selected without restriction or limitation of choice." *Any*, Webster's Third New International Dictionary 97 (1986). "Judgment" means "[a] court's final determination of the rights and obligations of the parties in a case," as well as "an equitable decree and *any* order from which an appeal lies." *Judgment*, Black's Law Dictionary 970 (10th ed. 2014) (emphasis added). Thus, our *Mamigonian* decision which construes § 1252(a)(2)(B)(i) as not applying to agency determinations "made on

nondiscretionary grounds," 710 F.3d at 945, is at odds with the plain language of the statute and ignores Congress's intent that this jurisdiction-stripping provision apply to "any judgment," *i.e.*, one selected without restriction.

Indeed, the Eleventh Circuit recently reversed its prior position, which aligned with our *Mamigonian* decision, and held that "[t]he statute means what it says[:] 'no court shall have jurisdiction to review' 'any judgment regarding the granting of relief . . . .'" *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1262, 1273 (11th Cir. 2020) (en banc).**³** The statutory scheme as a whole also supports this interpretation given that 8 U.S.C. § 1252(a)(2)(D) restores appellate courts' jurisdiction to review constitutional claims or questions of law. *See Patel*, 971 F.3d at 1275. If Congress wanted appellate courts to retain jurisdiction over agency determinations made on nondiscretionary grounds, it could have simply said so, like it did for constitutional questions or questions of law. *See id.* at 1275–76.

4. 8 U.S.C. § 1158(a)(2)(D) instructs that an application for asylum of an alien may be considered, notwithstanding that the petitioner did not file within the one-year time limit, or that the petitioner previously applied for asylum and had such application denied, "if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of . . .

---

**³** The Eleventh Circuit conducted a comprehensive analysis on the definition of the word "judgment" and explained that any doubt as to its meaning must be "resolved in favor of a more expansive meaning given the modifying phrases 'any' and 'regarding.'" *Patel*, 971 F.3d at 1273–74. The court thus concluded that the jurisdiction-stripping provision "precludes us from reviewing 'whatever kind' of judgment 'relating to' the granting of relief under the five enumerated sections." *Id.* at 1274.

extraordinary circumstances relating to the delay in filing an application." 8 C.F.R. § 1208.4(a)(5) defines "extraordinary circumstances" as "events or factors directly related to the failure to meet the 1-year deadline." And "[s]uch circumstances may excuse the failure to file within the 1-year period as long as the alien filed the application within a reasonable period given those circumstances." 8 C.F.R. § 1208.4(a)(5).

"We have held that a filing delay of less than six months after an applicant's nonimmigrant status has expired is presumptively reasonable." *Singh v. Holder*, 656 F.3d 1047, 1056 (9th Cir. 2011). "We based this holding on [65 Fed. Reg. 76121, 76123–24]," which provides: "Clearly, waiting six months or longer after expiration or termination of status would not be considered reasonable. Shorter periods of time would be considered on a case-by-case basis, with the decision-maker taking into account the totality of the circumstances." *Id.*

Our presumption as to the reasonableness of a filing delay of less than six months is based on flawed logic. The regulation's statement that a delay of six months or more "[c]learly" *is not* reasonable does not mean that the converse is also true, *i.e.*, that a delay of less than six months presumptively *is*—especially when the regulation itself states that shorter delays should be "considered on a case-by-case basis, with the decision-maker taking into account the totality of the circumstances." 65 Fed. Reg. at 76124. Thus, our less-than-six-month presumption is a judge-made rule that has no basis in the text of the INA or the regulations seeking to implement it. *Cf. Ming Dai*, 141 S. Ct. at 1677 ("Nothing in the INA contemplates anything like the embellishment the Ninth Circuit has adopted.").

\* \* \* \* \*

These are four examples of rules ingrained in our caselaw that we have continued to apply, but which, in my view, lack a statutory basis. There may well be others. Our decision today affirms that such rules have no place in our jurisprudence, and that we may only rely on such rules that sound in the text of the INA or its accompanying regulations.